J-S07010-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JEROME MICHAEL DERNS, | |
| Appellant | No. 1074 EDA 2017 |

Appeal from the Judgment of Sentence Entered March 6, 2017
In the Court of Common Pleas of Bucks County
Criminal Division at No(s): CP-09-CR-0002408-2016

BEFORE:  BENDER, P.J.E. , PANELLA, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:                     **FILED APRIL 23, 2018**

Appellant, Jerome Michael Derns, appeals *pro se* from the judgment of sentence imposed on March 6, 2017, after he was convicted of possession with intent to deliver a controlled substance, possession of a firearm by a person prohibited, and related offenses.  After careful review, we affirm.

The trial court summarizes the facts and procedural history of Appellant's case in its Pa.R.A.P. 1925(a) opinion.  **See** Trial Court Opinion (TCO), 6/19/17at 1-6.[1]  Herein, Appellant raises the following six claims for our review:

---

[1] However, the trial court does not discuss Appellant's waiver of his right to counsel on appeal, which occurred as follows.  After Appellant's sentencing hearing, his trial counsel filed a motion for leave to withdraw as counsel, stating that Appellant wished to proceed *pro se* on appeal.  **See** "Petition for

I.      Whether Appellant was denied his Sixth Amendment right[] to confront witnesses under the compulsory process, where he was denied his right to confront and cross examine [an] adverse witness?

II.     Whether Appellant was denied his Fifth Amendment right against self[-]incrimination when Appellant was not provided his **[M]iranda**[2] rights warnings against self-incrimination when subject[ed] to custodial interrogation?

III.    Whether Appellant was denied his Sixth and Fourteenth Amendment rights to a speedy trial when Appellant was tried beyond [one] year in violation of Pa.R.Crim.P.[]600?

IV.     Whether Appellant was denied his Fourteenth Amendment rights where the evidence was insufficient to sustain a guilty verdict for possession of a firearm?

V.      Whether Appellant was denied his Fifth and Fourteenth Amendment rights as a result of the sentencing [c]ourt's imposition of an illegal mandatory minimum sentence in violation of the Supreme Court precedent set forth in **Alleyne v. United States**, 133 S.Ct. 2151 (2013)?

---

Leave to Withdraw as Counsel," 3/17/17.  Appellant also signed that petition, affirming that he understood his right to counsel on direct appeal, and "acknowledg[ing] that he knowingly, voluntarily and intelligently waive[d] his right to have counsel on direct appeal."  **Id.** at 3 (unnumbered).  On March 22, 2017, the trial court issued an order granting counsel's petition to withdraw, and the following day, Appellant filed a *pro se* notice of appeal. He also thereafter filed a timely, *pro se* Pa.R.A.P. 1925(b) statement.  However, on April 20, 2017, Appellant filed a *pro se* request for counsel to be appointed. On May 18, 2017, the trial court conducted a hearing on that motion, ultimately denying it after concluding that Appellant had knowingly, voluntarily, and intelligently waived his right to counsel.  **See** N.T. Hearing, 5/18/17, at 12.  Notably, Appellant does not ask for counsel in his brief to this Court, nor raise any issue concerning the validity of his waiver of the right to an attorney, or the trial court's denial of his subsequent request for counsel to be appointed.  Accordingly, we express no opinion on those issues.

[2] **Miranda v. Arizona**, 86 S.Ct. 1602 (1966).

     VI.     Whether Appellant was denied his Sixth and Fourteenth Amendment rights where there was no issuing authority on the search warrant, resulting in an illegal search and seizure?

Appellant's Brief at 2.

We have reviewed the certified record, the briefs of the parties, and the applicable law. Additionally, we have reviewed the thorough and well-crafted opinion of the Honorable Jeffrey L. Finley, President Judge of the Court of Common Pleas of Bucks County. We conclude that Judge Finley's extensive, well-reasoned opinion accurately disposes of the issues presented by Appellant. Accordingly, we adopt his opinion as our own and affirm Appellant's judgment of sentence on the grounds set forth therein.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/23/18

IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA    :
                                :
                 v.             :        No. CP-09-CR-0002408-2016
                                :
                                :
JEROME DERNS                    :        1074 EDA 2017
                                :

**OPTIONAL**

**OPINION**

Jerome Derns (hereinafter "Appellant") appeals to the Superior Court of Pennsylvania

following his conviction and sentencing on March 7, 2017. Pursuant to Pennsylvania Rule of

Appellate Procedure 1925(a), we file this Opinion in support of the Court's ruling.

## I.    FACTUAL AND PROCEDURAL HISTORY

On January 29, 2016, Morrisville Borough Police Officer Lee Matthews met with an

individual (hereinafter "the Witness") who informed Officer Matthews that she knew Appellant

was in possession of controlled substances and firearms. N.T., 3/6/17, p. 15. The conversation

between Officer Matthews and the Witness was recorded with the Witness' permission on a

police body camera. Id. at 13. The Witness, who asked to remain anonymous due to concerns

for her safety,[1] told Officer Matthews that Appellant had a shotgun hidden under the porch of his

home, was in possession of artwork and land documents that were stolen in a burglary in

Tinicum Township, and that Appellant had previously crashed his vehicle in Falls Township and

fled the scene. Id. at 15-16. The Witness further advised Officer Matthews that there was a

---

[1] The Witness remained anonymous throughout trial in light of her concern of retribution by Appellant.
N.T., 3/6/17, p. 14. However, she provided Officer Matthews with her name, address, phone number, and
date of birth, which were all verified by Officer Matthews using the Pennsylvania Justice Network
(JNET). Id. at 20.

1



handgun belonging to Appellant hidden in the engine compartment of Appellant's vehicle. Id. at 15-16, 118.

Officer Matthews sought to confirm the information provided by the Witness. First, he contacted Tinicum Township Police Department, who confirmed that a burglary had taken place in Tinicum Township wherein artwork and land title documents had been stolen. N.T., 3/6/17, p. 16. Additionally, Officer Matthews contacted Falls Township Police Department to confirm that a one-vehicle car accident had occurred in the location described by the Witness. Id. Falls Township Police informed Officer Matthews that the vehicle was impounded and had been traced to Appellant. Id. at 16, 118.

Detective Chris Clark of the Falls Township Police Department then contacted David Goldstein, the State Parole Agent who supervised Appellant, to advise him of the information provided to Officer Matthews. N.T., 3/7/17, p. 23. One day earlier, on January 28, 2016, while conducting collateral checks, Agent Goldstein spoke with Morrisville Borough Police Chief George McClay who informed him that Morrisville police officers heard that Appellant may be dealing drugs and be in possession of a weapon. N.T., 3/6/17, p. 46. Based on the information received by Morrisville Borough Police, the Falls Township Police Department, and Officer Goldstein's personal knowledge of Appellant's criminal history involving controlled substances and firearms, and out of concerns for public safety, Agent Goldstein received authorization from his supervisor to go to Appellant's residence to speak with Appellant and to see if there were firearms present. N.T., 3/7/17, p. 23.

At approximately 3:30 p.m. on January 29, 2017, Agent Goldstein arrived to Appellant's residence at 71 East Philadelphia Avenue in Morrisville Borough, Bucks County. N.T., 3/7/17, p. 23. Agent Goldstein was accompanied by four state parole agents, two officers from Morrisville Borough Police Department, and one officer from Falls Township Police

2

Department. Id. at 24, 30. Agent Goldstein requested officers from Morrisville Borough Police and Falls Township Police to serve as additional security. Id. at 25.

While knocking on the back door of Appellant's property, a state parole agent noticed an object in a green plastic garbage bag sticking out from under the porch. N.T., 3/7/17, p. 26. The agent removed the bag from under the porch and immediately noticed the barrel of a shotgun. Id. The bag also contained 12 gauge Winchester shotgun shells as well as other 12 gauge shotgun ammunition. Id. at 122.

At this point, no one had answered the door and it appeared Appellant was not home. Id. at 24. Agent Goldstein then contacted Appellant by telephone and arranged to meet at a local retail store. N.T., 3/7/17, pp. 24, 39. The state parole agents remained outside Appellant's home, but the local police officers left the premises. Id. at 33, 52.

Upon Appellant's arrival to the store's parking lot, Agent Goldstein placed Appellant in handcuffs, conducted a pat down search, and transported Appellant to his home. Id. at 39-41. Once Agent Goldstein and Appellant arrived at Appellant's home, Agent Goldstein explained to Appellant that the state parole agents found a firearm outside. Id. at 46. Agent Goldstein further explained that he and his fellow agents needed to search the home for other contraband. N.T., 3/7/17, p. 46. Agent Goldstein then asked Appellant whether they were going to find any weapons or controlled substances. Id. at 32, 46. Appellant denied having any weapons or controlled substances in the home. Id. at 32, 46.

Agent Goldstein and his agents commenced the search of the home. Id. at 32. Shortly thereafter State Parole Agent Matthew Shawley notified Agent Goldstein that he found suspected controlled substances and paraphernalia in Appellant's bedroom. N.T., 3/7/17, p. 33. The suspected controlled substances were located in an insulated lunch box located next to a dresser in Appellant's bedroom. Id. at 53.

3

The Agents stopped their search at this point and contacted Morrisville Borough Police Department to advise them of what was found and request that they take over. Id. at 33. Morrisville Borough Police Department obtained and executed a search warrant shortly thereafter. Id.

During the execution of the search warrant, Officer Michael DiIanni discovered drug paraphernalia inside two plastic shopping bags in Appellant's bedroom. N.T., 3/7/17, p. 67. The paraphernalia found included blue wax glassine envelopes commonly used to package heroin, clear plastic baggies with a red apple stamped on the front, also commonly used to package controlled substances, and two digital scales. Id. at 67, 70.

Officer DiIanni also discovered four clear baggies containing controlled substances in Appellant's bedroom. Id. at 72. Two of the baggies contained a combined total of 8.06 grams of methamphetamine. Id. at 75-76. The remaining two baggies contained a combined total of 6.14 grams of heroin. N.T., 3/7/17, pp. 75-76. Finally, Officer DiIanni found live shotgun shells on the dresser in Appellant's bedroom. Id. at 84-85, 121.

The shotgun, ammunition, controlled substances, and paraphernalia were seized by the Morrisville Borough Police Department. N.T., 3/7/17, pp. 27-30. Officer John Aspromonti entered the shotgun's serial number into the National Crime Information Center (NCIC) to determine who owned the shotgun. Id. at 144. The search returned no records. Id.

The shotgun and a chambered shotgun round were both swabbed for DNA and submitted for lab testing. Id. at 136. A swab was also obtained from Appellant to serve as the reference DNA profile. N.T., 3/7/17, p. 142. No conclusions could be made from the DNA sample obtained from the swab of the chambered shotgun round. Id. at 114. The DNA profile obtained from the swab of the shotgun was found to be consistent with a mixture of at least two individuals. Id. at 114-15. The DNA profile included a major male contributor. Id. at 115.

4

However, Appellant was excluded as a possible contributor of the major component DNA profile. N.T., 3/7/17, p. 115.

On March 7, 2017, following a jury trial, Appellant was convicted of Possession of Firearm Prohibited,[2] Possession with Intent to Deliver,[3] two counts of Possession of a Controlled Substance,[4] and Possession of Drug Paraphernalia.[5] On Count One, Appellant was sentenced to five (5) to ten (10) years incarceration. On Count Two, Appellant was sentenced to thirty (30) to one hundred and twenty (120) months incarceration, to run concurrent to Count One. No further penalty was imposed on Counts Three, Four, and Five.

On March 23, 2017, Appellant filed his *pro se* Notice of Appeal to the Superior Court. On March 28, 2017, the Court ordered Appellant to file his Concise Statement of Errors Complained of on Appeal within twenty-one (21) days.

## II. STATEMENT OF ERRORS COMPLAINED OF ON APPEAL

On April 14, 2017, in accordance with Pennsylvania Rule of Appellate Procedure 1925(b), Appellant filed his Statement of Errors Complained of on Appeal, set forth *verbatim* herein:

1. Whether Appellant was denied his Sixth Amendment rights to confront witnesses under the compulsory process, where he was denied his right to confront and cross examine adverse witnesses;

2. Whether Appellant was denied his Fifth Amendment right against self-incrimination, when Appellant was not provided his Miranda rights warnings against self-incrimination when subject to custodial interrogation;

---

[2] 18 Pa.C.S.A. § 6105(a)(1).

[3] 35 Pa.C.S.A. § 780-113(a)(30).

[4] 35 Pa.C.S.A. § 780-113(a)(16). Appellant was charged with one count of Possession of a Controlled Substance for possessing heroin and one count for possessing methamphetamine.

[5] 35 Pa.C.S.A. § 780-113(a)(32).

5

3. Whether Appellant was denied his Sixth and Fourteenth Amendment rights to a speedy trial, when Appellant was tried beyond a year in violation of Pa.R.Crim.P. 600;

4. Whether Appellant was denied his Fourteenth Amendment rights, where the evidence was insufficient to sustain a guilty verdict for possession of a firearm;

5. Whether Appellant was denied his Fifth, Sixth and Fourteenth Amendment rights as a result of the Sentencing Court's imposition of an illegal mandatory minimum sentence in violation of the Supreme Court precedent set forth in Alleyne v. United States, 133 S. Ct. 2151 (2013);

6. Whether Appellant was denied his Sixth and Fourteenth Amendment rights, where there was no issuing authority on the search warrant, resulting in an illegal search and seizure.

## III. DISCUSSION

Appellant first argues that his Sixth Amendment right to confront witnesses[6] was violated. The Sixth Amendment to the United States Constitution, applied to the states through the Fourteenth Amendment, provides that a criminal defendant is guaranteed the right to confront the witnesses against him. See U.S.C.A. Const. amend. VI. The United States Supreme Court has stated that the Sixth Amendment Confrontation Clause "provides two types of protections for a criminal defendant: the right physically to face those who testify against him, and the right to conduct cross-examination." See Pennsylvania v. Ritchie, 480 U.S. 39, 51 (1987) (citing Delaware v. Fensterer, 474 U.S. 15, 18-19 (1985)). Confrontation Clause issues may arise where the defendant is improperly excluded from trial or where hearsay evidence is improperly introduced as substantive evidence. See Ritchie, 480 U.S. at 51.

---

[6] Appellant's first error on appeal asserts a violation of his right to confront witnesses under the compulsory process. However, because he goes on to argue that he was denied his right to confront and cross examine adverse witnesses, rather than his right to obtain witnesses in his favor, this Court is of the opinion that Appellant inadvertently included "under the compulsory process" and intended to assert that he was denied his right to confront and cross-examine adverse witnesses pursuant to the Confrontation Clause.

6

Appellant has not specified how he was denied his Sixth Amendment right to confront witnesses. Because none of the circumstances in which Confrontation Clause issues commonly arise are present here,[7] the Court will briefly discuss Appellant's pre-trial motion[8] seeking to have the Commonwealth disclose the identity of the Witness, which the Court believes may be the basis for Appellant's argument.

In Appellant's pre-trial motion entitled "Motion to Disclose the Identity of the Confidential Informant", Appellant argued that the recording of the conversation between Officer Matthews and the Witness was discoverable as exculpatory material because the Witness did not qualify as a confidential informant and therefore does not enjoy the same protection as a confidential informant. N.T., 3/6/17, pp. 10-11. Appellant further asserted that the withholding of the recording, and in turn, the Witness' identity, violated Appellant's right to confront his accusers.

The Court denied Appellant's Motion to Disclose the Identity of the Confidential Informant. Id. at 123. The Court found that the Witness was neither a confidential informant nor an anonymous tipster. Id. at 122-23. Nonetheless, the Court noted that like a confidential informant, Appellant wished to protect her identity out of fear of retribution. Id. The Court explained that society has an interest in protecting the identity of witnesses to encourage citizens to disclose valuable information which may aid police in protecting the community from criminal activity and violence. N.T., 3/6/17, p. 123. Finally, the Court found that Appellant

---

[7] Appellant was present for the entire duration of trial. Additionally, Appellant enjoyed the assistance of counsel, who cross-examined witnesses the Commonwealth presented. Finally, Appellant has not identified any hearsay evidence that was improperly introduced as substantive evidence.

[8] Appellant also filed two separate motions to suppress evidence. The Court denied both motions. For the purposes of this appeal, Appellant appears to only challenge the Court's ruling on the motion regarding the identity of the Witness.

7

failed to identify any exculpatory purpose of the recording besides mere speculation that it may contain evidence of bias. Id. The Court noted that the information provided by the Witness was corroborated prior to the initial search. Id.

The Court did not violate Appellant's right of confrontation pursuant to the Sixth Amendment by denying his Motion to Disclose the Identity of the Confidential Informant. For purposes of trial, Agent Goldstein and Officer John Aspromonti were Appellant's accusers, not the Witness. Agent Goldstein and Officer Aspromonti's testimony based on their independent observations of the presence of controlled substances and a shotgun at Appellant's residence combined with all other evidence presented at trial was sufficient to prove that Appellant committed the crimes charged. Therefore, although the Witness' out-of-court accusations regarding Appellant's criminal activity were included in the affidavit of probable cause prepared by Officer Aspromonti, her accusations were not considered in determining the guilt of Appellant at trial.

Appellant next asserts that he was denied his Fifth Amendment right against self-incrimination when he was not provided his Miranda[9] warnings while subject to custodial interrogation. This is the first time Appellant is offering this argument. Pennsylvania Rule of Appellate Procedure 302(a) provides that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal[ ]". Pa.R.A.P. 302(a). Additionally, courts have reiterated this sentiment by noting that "[a] new and different theory of relief may not be successfully advanced for the first time on appeal." Commonwealth v. Santiago, 980 A.2d 659, 666 n.6 (Pa. Super. Ct. 2009). Accordingly, Appellant waived this claim by failing to advance it prior to this appeal.

---

[9] Miranda v. Arizona, 384 U.S. 436 (1966).

Additionally, should this Court find that Appellant properly preserved this claim, we believe Appellant has waived this argument on other grounds. Specifically, Appellant has failed to identify any incriminating statements he made that should have been suppressed. Pennsylvania courts have noted that vague issues raised in an appellant's Pennsylvania Rule of Appellate Procedure 1925(b) statement is equivalent to not raising the issues at all. See Commonwealth v. Seibert, 799 A.2d 54, 65 (Pa. Super. Ct. 2002). "When the trial court has to guess what issues an appellant is appealing, that is not enough for meaningful review." Commonwealth v. Dowling, 778 A.2d 683, 685 (Pa. Super. Ct. 2001).

Our review of the record indicates that Appellant repeatedly denied being in possession of any controlled substances or firearms when asked by his parole agent if he would find any contraband in Appellant's home. N.T., 3/7/17, pp. 32, 40, 45, 46. Without a more precise statement by Appellant, it is impossible for this Court to address which, if any, incriminating statements exist that Appellant believes were obtained in violation of Miranda. As such, this issue is waived.

Next, Appellant alleges that he was tried beyond one year in violation of his speedy trial rights pursuant to the Sixth and Fourteenth Amendments to the United States Constitution and Pennsylvania Rule of Criminal Procedure 600. A speedy trial claim must be raised before trial in order to preserve the issue for appellate review. See Commonwealth v. Roundtree, 326 A.2d 285, 287 (Pa. 1974); Commonwealth v. Hunsinger, 549 A.2d 973, 976 (Pa. Super. Ct. 1988). Appellant failed to raise a speedy trial claim before trial. Accordingly, the claim is waived. However, we will nonetheless address Appellant's argument should this Court find that the claim has not been waived.

An accused's right to a speedy trial is protected by both federal and state guarantees. The Sixth Amendment right to a speedy trial has been extended to the states through the Due Process

9

Clause of the Fourteenth Amendment. See Klopfer v. North Carolina, 386 U.S. 213, 223-23 (1967). The Pennsylvania Supreme Court has outlined a two-step speedy trial analysis: (1) whether the delay violated the Pennsylvania Rules of Criminal Procedure and, if not, then (2) whether the delay violated the defendant's right to a speedy trial guaranteed by the Sixth Amendment to the United States Constitution and by the Pennsylvania Constitution. See Commonwealth v. DeBlase, 665 A.2d 427, 431 (Pa. 1995).

Pennsylvania Rule of Criminal Procedure 600 provides that "trial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed." Pa.R.Crim.P. 600(A)(2). A Rule 600 analysis requires a court to first calculate the mechanical run date, which is 365 days after the complaint was filed. See Commonwealth v. Goldman, 70 A.3d 874, 879-80 (Pa. Super. Ct. 2013). The mechanical run date is then adjusted to account for any "excludable time" and "excusable delay." Id. Excludable time is delay resulting from the unavailability of the defendant or his attorney, or any continuance granted at the request of the defendant or his attorney. Pa.R.Crim.P. 600(C). Excusable delay is delay that occurs as a result of circumstances beyond the Commonwealth's control and despite its due diligence. Goldman, 70 A.3d at 879-80.

Here, the criminal complaint was filed on January 29, 2016. Thus, the mechanical run date was January 28, 2017. Appellant's trial was originally scheduled for June 29, 2016, but did not commence until March 6, 2017, 37 days beyond the mechanical run date. However, there are several instances of excludable time and one instance of excusable time.

First, on June 29, 2016, Appellant requested a continuance to September 7, 2016. Thus, the 70 day period of time from June 29, 2016 to September 7, 2016 is excludable pursuant to Pennsylvania Rule of Criminal Procedure 600(C)(3)(b). Second, on September 6, 2017, Appellant requested a continuance to October 17, 2016, a period of 41 days of excludable time.

10

Next, on October 17, 2016, trial was continued to November 9, 2016 because the affiant was unavailable due to training, a circumstance outside the Commonwealth's control. Thus, this 23 day period is excusable time.

Next, on November 9, 2016, Appellant's counsel was unavailable and trial was continued to January 3, 2017, resulting in a 55 day period of excludable time. Finally, on January 3, 2017, trial was continued to March 6, 2017 upon request by Appellant. This is another instance of excludable time amounting to 62 days. Accordingly, excludable time equals 228 days and excusable time equals 23 days for a combined total of 251 days.

When we add the 251 days to the mechanical run date of January 28, 2017, the run date is extended to October 6, 2017. Appellant's trial commenced March 6, 2017, and therefore, there was no Rule 600 violation. Accordingly, we must next consider whether Appellant's constitutional speedy trial rights were violated.

In determining whether an unconstitutional speedy trial violation occurred, the United States Supreme Court identified four factors that must be weighed: (1) the length of delay; (2) the reason for delay; (3) the defendant's assertion of his speedy trial rights; and (4) the prejudice to the defendant. Barker v. Wingo, 407 U.S. 514, 530 (1972). The length of the delay serves as a "triggering mechanism." Id. at 530. "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." Id. Courts have generally treated post-accusation delays to be presumptively prejudicial as the delay approaches one year. See Doggett v. United States, 505 U.S. 647, 652 n. 1 (1992).

Here, Appellant was arrested on January 29, 2016 and tried on March 6, 2017, a period of approximately thirteen months. Thus, this Court will proceed to examine the remaining factors.

11

As to the second factor, the reason for delay, previously discussed in our Rule 600 analysis, there were five continuances in this case. Appellant requested four of the five of those continuances. As such, the delay of this trial is almost entirely attributable to Appellant.

As to the third factor, Appellant did not previously assert his speedy trial rights. Notably, Appellant did not assert a Rule 600 claim relating to his speedy trial rights until this appeal.

Finally, in analyzing the fourth factor, prejudice to Appellant, we must consider the interests that speedy trial rights serve to protect, including:

> To prevent oppressive pretrial incarceration; to minimize anxiety and concern of the accused; and to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.

Commonwealth v. DeBlase, 635 A.2d 1091, 1094 (Pa. Super. Ct. 1994). Here, at least two of Appellant's continuances were requested in order for Appellant to review discovery and prepare for trial. Appellant has not claimed that the delay prejudiced him or his ability to prepare for trial. Further, Appellant has not indicated how the thirteen month time period between the filing of the criminal complaint and the commencement of trial caused him any prejudice.

In weighing the four factors, this Court finds that although thirteen months passed between the time of the filing of the criminal complaint and the commencement of trial, this time period is almost entirely attributable to Appellant, Appellant did not previously assert his speedy trial rights, and Appellant has not been prejudiced by the thirteen month period. Accordingly, Appellant's constitutional right to a speedy trial was not violated.

Next, Appellant argues that insufficient evidence was presented to sustain a guilty verdict as to the offense of Possession of Firearm Prohibited. The test for a challenge to the sufficiency of the evidence is whether "the Commonwealth established beyond a reasonable doubt each of the elements, considering all the evidence admitted at trial, and drawing all reasonable inferences

therefrom in favor of the Commonwealth." Commonwealth v. Brown, 48 A.3d 426, 430 (Pa. Super. Ct. 2012). The entire record must be evaluated in "aggregate and not as fragments isolated from the totality of evidence." Commonwealth v. Rosado, 684 A.2d 605, 607-08 (Pa. Super. Ct. 1996).

"The trier of fact bears the responsibility of assessing the credibility of the witnesses and weighing the evidence presented." Id. "In doing so, the trier of fact is free to believe all, part, or none of the evidence." Id. Wholly circumstantial evidence may be used to sustain the Commonwealth's burden. Commonwealth v. Markman, 916 A.2d 586, 598 (Pa. Super. Ct. 2007).

The standard upon review is whether the verdict is so contrary as to "shock one's sense of justice." Commonwealth v. Shaffer, 40 A.3d 1250, 1253 (Pa. Super. Ct. 2012). Competent evidence supporting the verdict is sufficient. Commonwealth v. Mudrick, 507 A.2d 1212, 1213 (Pa. 1986).

To establish the elements of Possession of Firearm Prohibited, the Commonwealth must prove that the defendant is a person prohibited by law from possessing a firearm by virtue of a prior conviction of a particular category of offenses. See 18 Pa.C.S.A. § 6105(a)(1). Additionally, that the defendant knowingly possessed, used, or controlled a firearm within the Commonwealth. Id.

The parties stipulated to the fact that Appellant was a person prohibited by law from possessing a firearm as a result of his prior conviction for a violation of the Controlled Substance, Drug, Device and Cosmetic Act. N.T., 3/7/17, pp. 21-22. As to the element of possession, there is no direct evidence of Appellant actually possessing the shotgun. However, the Commonwealth proved Appellant had constructive possession of the shotgun.

In order to prove constructive possession of the shotgun, the Commonwealth must establish that Appellant "had both the ability to consciously exercise control over it as well as the intent to exercise such control." Commonwealth v. Harvard, 64 A.3d 690, 699 (Pa. Super. Ct. 2013). "An intent to maintain a conscious dominion may be inferred from the totality of the circumstances, and circumstantial evidence may be used to establish possession." Id.

Here, a shotgun was found under the porch of Appellant's residence. Besides Appellant's children, Appellant lived in the home alone and was living at this home for at least one year. N.T., 3/7/17, pp. 19, 28. Inside the home, in Appellant's bedroom, police officers found 12 gauge ammunition that fit and would be used with the shotgun found under the house. Id. at 135. Some of this ammunition was located directly on top of Appellant's dresser. Id. at 84-85. Under these circumstances, the jury could reasonably infer that Appellant had the ability and intent to control the shotgun.

The jury weighed all of the evidence presented, evaluated the credibility of all witnesses, and returned a verdict finding Appellant guilty of all charges, including the offense of Possession of Firearm Prohibited. The Commonwealth satisfied its burden and provided sufficient evidence that Appellant was previously convicted of a particular offense which rendered him unable to possess a firearm and that Appellant, in fact, possessed a firearm within the Commonwealth. Accordingly, the jury's verdict as to this offense was supported by sufficient evidence.

Appellant's next argument on appeal is that the Court imposed an illegal mandatory minimum sentence in violation of Alleyne v. United States, 133 S. Ct. 2151 (2013). In Alleyne, the United States Supreme Court held that any fact that triggers an increase in the mandatory minimum sentence is an element of the offense that must be submitted to the jury. Alleyne, 131 S.Ct. at 2153. In light of Alleyne, several mandatory minimum statutes have been held

14

unconstitutional by Pennsylvania courts. See Commonwealth v. Mosley, 114 A.3d 1072 (Pa. Super. Ct. 2015); Commonwealth v. Newman, 99 A.3d 86 (Pa. Super. Ct. 2014).

For example, the Pennsylvania Superior Court in 2015 held that 18 Pa. C.S.A. § 7508, which required mandatory minimum sentences for violations of particular subsections of the Controlled Substance, Drug, Device and Cosmetic Act, was unconstitutional. See Mosley, 114 A.3d at 1091. Thus, prior to 2015, Appellant's conviction of Possession with Intent to Deliver would have subjected him to the mandatory minimum sentence provisions pursuant to 18 Pa. C.S.A. § 7508. However, in light of the invalidation of 18 Pa. C.S.A. § 7508 and the inapplicability of a mandatory minimum sentencing scheme to a conviction of Possession of Firearm Prohibited, the Court did not impose a mandatory minimum sentence for either offense.

Finally, Appellant challenges the issuing authority on the search warrant. Appellant asserts that he was denied his Sixth and Fourteenth Amendment rights because there was no issuing authority on the search warrant, resulting in an illegal search and seizure. Appellant did not previously raise this particular issue, rendering this claim waived. However, because Appellant generally challenged the legality of the search warrant and the resulting searches during pre-trial motions, we will proceed with our analysis as if the claim was properly preserved.

Pennsylvania Rule of Criminal Procedure 200 provides that "[a] search warrant may be issued by any issuing authority within the judicial district wherein is located either the person or place to be searched." Pa.R.Crim.P. 200. The Comment to Rule 200 provides that a magisterial district judge, among other judicial officers, is formally authorized to issue a search warrant. See Comment to Pa.R.Crim.P. 200. Additionally, a magisterial district judge has countywide jurisdiction and therefore may issue a search warrant for premises located outside his or her

magisterial district, but within the same county. See Commonwealth v. Ryan, 400 A.2d 1264, 1266 (Pa. 1979).

Here, the search warrant was signed by John I. Waltman, the Magisterial District Judge for Lower Southampton Township, Bucks County, at that time. The search warrant lists Appellant's home, 71 East Philadelphia Avenue, Morrisville, Bucks County, as the premises to be searched. Judge Waltman was a magisterial district judge in Bucks County and therefore had jurisdiction to issue a search warrant for any residence located in Bucks County. Thus, the search warrant was properly signed by a magisterial district judge, a recognized issuing authority, located in the same judicial district as the premises to be search. Accordingly, the issuing authority on the search warrant is valid.

## IV. CONCLUSION

For the foregoing reasons, this Court perceives that the issues of which Appellant has complained in this appeal are without merit.

BY THE COURT:

DATE: _June 19, 2017_

JEFFREY L. FINLEY, P.J.

16